UNITED STATES DISTRICT COURT

Northern District of California

ELIZABETH KARNAZES,

                Plaintiff,

  v.

COUNTY OF SAN MATEO and DEBORAH TITONE,

                Defendants.
_____/

No. C 09-0767 MMC (MEJ)

**FURTHER ORDER RE: DISCOVERY DISPUTES**

## I. INTRODUCTION

Before the Court are three discovery dispute letters filed by the County of San Mateo and Deborah Titone (collectively "Defendants"). (Dkt. ## 53-55.) Pursuant to this Court's *Order Denying Plaintiff's Request that the Court Consider Discovery Filings that Are Not in Compliance with the Discovery Standing Order and the Court's Previous Discovery Orders in this Case*, (Dkt. #66), the Court will not consider any responses to Defendants' letters filed by Plaintiff Elizabeth Karnazes ("Plaintiff"). Accordingly, after consideration of Defendants' papers, relevant legal authority, and good cause appearing, the Court ORDERS as follows.

## II. BACKGROUND

According to Defendants' letters, the instant action arose out of Plaintiff's February 22, 2008 appearance as a defendant in criminal court, where she filed a form seeking court-appointed counsel. (Dkt. #53.) The form contained a requirement that Plaintiff provide the court with basic financial

information. *Id.* At the hearing, the judge did not make an appointment of counsel and informed Plaintiff that she would have to fill out a new form and provide financial documentation at a later time. *Id.* At that time, Plaintiff asked if she could have the form back, but the judge said no. *Id.* Plaintiff then asked if she could copy the form, but the judge again said no. *Id.* Plaintiff next asked if she might have an opportunity to review the form, and the judge said yes. *Id.* Plaintiff then took the form to the Clerk's Office and told them that the judge authorized her to have a copy made. *Id.* The judge then sent her deputy, Defendant Deborah Titone, to the Clerk's Office to retrieve the form. *Id.* When Deputy Titone attempted to retrieve the form from Plaintiff, a struggle ensued. *Id.*

On February 20, 2009, Plaintiff filed the present complaint. In her Complaint, Plaintiff alleges that Deputy Titone, claiming to be acting on instructions from the judge, forcibly attacked Plaintiff, threw her to the ground without justification, kicked her repeatedly, stomped on her back, twisted her arm severely, and shouted at her in the hallway of the courthouse. (Pl.'s Compl. ¶ 9, Dkt. #1.) Plaintiff further alleges that the County of San Mateo authorized, condoned, and/or ratified Deputy Titone's conduct. *Id.* at ¶ 10.

On October 1, 2009, the Honorable Maxine M. Chesney referred all discovery disputes in this matter to the undersigned. (Dkt. #24.) To date, three Orders to Show Cause have been issued in this matter based on Plaintiff's failure to participate in the discovery process and to comply with Court orders. First, Judge Chesney issued an Order to Show Cause on August 21, 2009 based on Plaintiff's failure to appear at a case management conference. (Dkt. #16.) In her response to Judge Chesney's Order, Plaintiff claimed that she missed the case management conference due to a calendaring error. (Dkt. #18.) Judge Chesney then issued an order discharging the Order to Show Cause, based on Plaintiff's good cause showing. (Dkt. #19.)

Next, the undersigned issue an Order to Show Cause on January 20, 2010 based on Plaintiff's failure to appear at a court-ordered meet and confer session. (Dkt. #39.) In her response, Plaintiff cited the Notice of Unavailability of Counsel she filed on December 14, 2009, (Dkt. #34), and stated that she was out of the country, unable to read or receive documents, and was unaware that there was a meet and confer session ordered until she received the Order to Show Cause. (Dkt.

2

1  #40.) Counsel for Defendants filed a declaration in response, arguing that Plaintiff had
2  misrepresented the facts surrounding her unavailability notice. (Dkt. #41.)  On February 5, 2010,
3  the undersigned, in an attempt to avoid "any he said, she said contentious developments that do
4  nothing to aid in the resolution of this case," vacated the scheduled hearing on the Order to Show
5  Cause and ordered Plaintiff to contact counsel for Defendants within five days to schedule a meet
6  and confer. (Dkt. #42.)  On February 12, 2010, counsel for Defendants filed a letter indicating that
7  Plaintiff had failed to contact him, in violation of the February 5 Order. (Dkt. #43.)

       Accordingly, on February 17, 2010, the undersigned issue an Order to Show Cause based on Plaintiff's repeated failure to comply with her discovery obligations. (Dkt. #44.)  On February 26, 2010, Plaintiff responded that she stated that she had left Defendants' counsel multiple messages in an attempt to meet and confer, none of which were returned. (Dkt. #45.)  On March 1, 2010, in discharging the Third Order to Show Cause, the Court found that Plaintiff had not accepted responsibility for her failure to comply with discovery obligations and laid out guidelines for the parties to follow. (Dkt. #47.)  Regarding disputes that the parties were unable to resolve informally, the Court ordered them to submit those disputes in compliance with the undersigned's standing discovery order. *Id.*  However, Plaintiff subsequently failed to comply with the March 1 Order. Specifically, on March 17, 2010, the parties met and conferred regarding the disputes detailed below and discussed drafts that Defendants had prepared for three letters. (Dkt. #53.)  At the meet and confer, Plaintiff informed Defendants that she would respond to their drafts the following day so that the letters could be filed on March 19, 2010.  *Id.*  After two subsequent email conversations, Plaintiff informed Defendants that she would not provide them her portion of the letters.  *Id.*  Thus, on March 24, 2010, Defendants filed three separate discovery dispute letters. (Dkt. ##53-55.)

       On March 29, 2010, Plaintiff filed a notice stating that she disagreed with Defendants' letters and would file her own letters by April 5, 2010. (Dkt. #56.)  On April 6, 2010, Plaintiff filed a letter stating that she intended to file a letter detailing the inaccuracies contained in Defendants' discovery letters (Dkt. #57), which the Court struck based on Plaintiff's failure to comply with the standing discovery order (Dkt. #58.)  Next, Plaintiff filed three discovery dispute letters in response to

3

1  Defendants' (Dkt. ##60-62), which the Court struck for the same reason (Dkt. #63).  The following
2  day, Plaintiff filed an affidavit asking the Court to consider her discovery letters, again accepting no
3  responsibility for her failure to comply with the orders of this Court.  (Dkt. #64.)  The Court denied
4  that request.  (Dkt. #66.)  The Court shall now address each of Defendants' discovery letters in turn.

## III. DISCUSSION

### A. Discovery Letter #1 (Dkt. #53)

Defendants' first letter seeks an order compelling Plaintiff to provide them with a computation of her damages, as required by Federal Rule of Civil Procedure ("Rule") 26.  Defendants state that they have propounded document requests and interrogatories designed to obtain information regarding the facts underlying Plaintiff's claim for damages, but argue that Plaintiff has not provided any documents or responses to interrogatories which detail her damages, nor has she provided a computation of her damages in her disclosures.

In her Complaint, Plaintiff alleges that her damages arising out of the February 22, 2008 incident include pain and suffering and medical/health care provider treatment.  (Pl.'s Compl. ¶¶ 13, 14, Dkt. #1.)  However, in the damages section of her Rule 26 disclosures, Plaintiff states that she "has not yet found an attorney to represent her and has not calculated her damages.  When damages are calculated the information will be provided."  (Ex. 1 at 2:13-16, Dkt. #53.)

Rule 26 provides that a party must provide, without a discovery request, "a computation of each category of damages claimed by the disclosing party[,]" as well as documents "on which each computation is based, including materials bearing on the nature and extent of injuries suffered. . . ."  Fed. R. Civ. Proc. 26(a)(1)(A)(iii).  Here, Plaintiff has not provided Defendants with any kind of damage calculation.  Although she is not required to provide an exact computation of damages in her initial disclosures, Plaintiff must, at the very least, give Defendants and the Court some idea of the amount of damages suffered.  *See Henry's Marine Service, Inc. v. Fireman's Fund Ins. Co.*, 193 Fed. Appx. 267, 278 (5th Cir. 2006).  Thus, based upon the plain language of Rule 26, the Court ORDERS Plaintiff to provide supplemental disclosures within thirty days of this Order.  Plaintiff's disclosures shall include a computation of her damages as well as the documents or other evidentiary

material upon which each computation is based.

**B.     Discovery Letter #2 (Dkt. #54)**

Defendants' second discovery letter asks the Court to order Plaintiff to produce documents responsive to Request for Production ("RFP") Nos. 5-7, 16-20, 24-28, and 30. Defendants argue that Plaintiff has produced no documents which relate to her damages claim, except some documents relating to two incidents where Plaintiff was involuntarily psychologically hospitalized in the Fall of 2007. The RFPs at issue seek documents relating to Plaintiff's alleged physical and mental injuries, and financial documents such as tax returns and bank statements. Defendants argue that they are entitled to the documents sought for two reasons. First, Plaintiff is claiming severe emotional distress, out-of-pocket costs and loss of income due to the events which took place on February 22, 2008. Defendants maintain that documents responsive to the above requests will allow them to evaluate Plaintiff's damage and loss of income claims.

Second, Defendants argue that documents responsive to the above requests are critical to their defense. Defendants' theory of the case is that Plaintiff lied on the form which she attempted to copy in the Clerk's Office, prompting her to repeatedly demand that the judge return it to her. Defendants maintain that documents responsive to the above requests may provide evidence that Plaintiff did lie on that form and would help to explain her behavior and refusal to return the form.

In her response to Defendants' RFPs, Plaintiff objects to each and every one of the requests as compound, complex, harassing, protected by attorney-client and work product privileges, vague, ambiguous, overly broad, unintelligible, and overly burdensome. (Dkt. #54, Ex. A, Ex. B.) As to RFP Nos. 5-7 and 16-20, Plaintiff responded that the documents sought are not within her possession, custody or control, or have already been produced. (Dkt. #54, Ex. A.) As to RFP Nos. 24-28 and 30, Plaintiff responded that the requests seek information that is not discoverable, not subject to production, and is privileged. (Dkt. #54, Ex. B.)

Rule 26(b)(1) dictates that discovery requests are limited to unprivileged material that is both relevant to the subject matter involved in the pending action and reasonably calculated to lead to the discovery of admissible evidence. A relevant matter is "any matter that bears on, or that

5

reasonably could lead to other matters that could bear on, any issue that is or may be in the case" and is not limited to only those specific issues raised in the pleadings. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Rule 26(b)(1) further provides that relevant matter includes "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." As previously discussed, Rule 26 also provides that a party must provide, without a discovery request, "a computation of each category of damages claimed by the disclosing party[,]" as well as documents "on which each computation is based, including materials bearing on the nature and extent of injuries suffered. . . ." Fed. R. Civ. Proc. 26(a)(1)(A)(iii). Finally, Rule 26(a)(1)(A)(ii) requires that Plaintiff disclose a copy or the location and description of all documents and tangible things that she may use to support her claims.

    1.    <u>RFP Nos. 5-7 and 16-20</u>

RFP Nos. 5-7 and 16 seek documents that either support or contradict Plaintiff's allegations that she was harmed as a result of the alleged violence at issue in this case, that she incurred damages for pain and suffering, that she is experiencing severe emotional distress, and that she incurred damages for medical/health care provider treatment. (Dkt. #54.) RFP Nos. 17 and 18 seek documents concerning medical care Plaintiff received before or after February 22, 2008 for any part of her body which she claims was injured on February 22, 2008. *Id.* RFP No. 19 seeks all documents concerning any medical health care Plaintiff received after January 1, 2000. *Id.* RFP No. 20 seeks copies of any personal injury lawsuit in which Plaintiff was a party. *Id.*

Here, the Court finds that Defendants are entitled to production of documents responsive to RFP Nos. 5-7 and 16-20. As discussed above, Plaintiff is required to produce documents in support of her damage claims as well as materials which evidence the nature and extent of injuries suffered. Further, whether Plaintiff had suffered physical injuries or mental health problems predating the incident at issue is relevant to her damages claims because such evidence would tend to affect the amount of damages to which she would be entitled if she were the prevailing party. However, the Court finds that RFP Nos. 17 and 20 are overbroad. RFP No. 17 seeks all documents concerning

6

medical care Plaintiff received on or before February 22, 2008 for injury to any part of her body Plaintiff claims was injured as a result of the incident at issue. As this request has no time limit, the Court finds it appropriate to limit production to February 22, 1998, ten years prior to the incident date, up to February 22, 2008. RFP No. 20 seeks copies of any personal injury lawsuit to which Plaintiff was a party, but also provides no time limit. As this is overbroad as to time, the Court finds it appropriate to limit production to February 22, 1998, ten years prior to the incident date, up to February 22, 2008. Thus, the Court finds that Defendants are entitled to production of documents responsive to RFP No. 20, dating back to February 22, 1998. Based on the foregoing, the Court ORDERS Plaintiff to produce documents responsive to RFP Nos. 5-7 and 16-20, as limited above.

2. <u>RFP No. 24</u>

RFP No. 24 seeks production of documents identified in Plaintiff's disclosures which she plans to use at trial. (Dkt. #54.) Per the plain language of Rule 26(a)(1)(A)(ii), the Court finds that Defendant is entitled to documents responsive to RFP. No. 24. Accordingly, the Court ORDERS Plaintiff to produce documents responsive to RFP No. 24.

3. <u>RFP Nos. 25-28 and 30</u>

RFP Nos. 25-28 seek all personal and business tax forms submitted by Plaintiff to the IRS for years 2007-2008. (Dkt. #54.) RFP No. 30 seeks bank statements for any accounts controlled by Plaintiff for the period of August 2007-August 2008. *Id.* Defendants contend that, because Plaintiff is a sole practitioner, there is no other way to evaluate her loss of income claim than to review her tax records and bank statements. However, Defendants state that they are willing to accept alternative documents if they provide similar verifiable income information.

"Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005); Fed. R. Evid. 501. "Under federal law, tax returns and related documents do not enjoy an absolute privilege from discovery." *Southern California Housing Rights Center v. Krug*, 2006 WL 4122148, at *3 (C.D. Cal. September 5, 2006) (citing *Premium Services Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975)) (internal quotations omitted). However, there exists a public policy

7

1 against unnecessary disclosure to encourage taxpayers to file complete and accurate tax returns. *Premium Services Corp.*, 511 F.2d at 229. To balance the need for discovery with the public policy favoring confidentiality of tax returns, courts apply a two-prong test. *Southern California Housing Rights Center*, 2006 WL 4122148, at *3. "First, the court must find that the returns are relevant to the subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Id.* (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006). Courts apply the same two-part test to determine whether a party should have to disclose other financial information, such as financial statements. *Id.* at *4.

Here, the Court finds that Defendants' need for Plaintiff's tax returns and financial statements for years 2007-2008 outweighs any privacy concerns Plaintiff may have. First, Plaintiff alleges that she has suffered a loss of income as a result of the February 22, 2008 incident, so her tax returns and financial statements are certainly relevant to the subject matter of the action. Second, Defendants have a compelling need for the returns because Plaintiff has offered no documentation or proof of her current or past income to substantiate her loss of income claim. Thus, the Court finds that Defendants are entitled to Plaintiff's business and personal tax returns for years 2007-2008, and bank statements for all accounts controlled by Plaintiff for August 2007-August 2008.

However, Defendants state that they are "willing to accept alternative documents that provide similar verifiable income information." Accordingly, Plaintiff is ORDERED either to produce the tax returns and bank statements discussed above or to produce alternative documents that provide similar verifiable income information.

**C.     Discovery Letter #3 (Dkt. #55)**

In their third discovery letter, Defendants request that the Court order Plaintiff to complete a signed release pursuant to RFP No. 19 so that they may obtain her medical records. Defendants also request that the Court order Plaintiff to supplement her responses to Interrogatory Nos. 3, 4, 6, and 7.

1.     RFP No. 19

First, Defendants state that they have subpoenaed Plaintiff's mental health and medical

8

1  records from Dr. Heitner, Plaintiff's treating doctor as identified in her Rule 26 disclosures, and that
2  Dr. Heitner has not produced any documents in response. Defendants argue that they have
3  repeatedly asked Plaintiff to sign a release so that they may obtain copies of her records directly
4  from Dr. Heitner, but she has refused. Defendants ask the Court to order Plaintiff to provide a
5  signed release to Dr. Heitner so that these records may be obtained.

6  In response to Defenants' RFP No. 19, Plaintiff argues that it is compound, complex,
7  harassing, requests privileged information, is vague, ambiguous, overly broad, entirely
8  unintelligible, and unduly burdensome. (Dkt. #54, Ex. A.)  Plaintiff further states that the requested
9  documents are not within her possession, custody, or control, but when they come within her
10 control, she will produce them. *Id.*

11 Defendants' request is well-taken. Plaintiff alleges physical and mental injury as a result of
12 the February 22, 2008 incident, but has yet to produce documents or information to support her
13 claim. Pursuant to Rule 26(a)(1)(A)(iii), Plaintiff is required to produce documents which evidence
14 her injuries. Accordingly, the Court ORDERS as follows: Defendants are to prepare a written
15 release form and submit it to Plaintiff within seven days following issuance of this Order. Plaintiff
16 is then ORDERED to sign the release and return it to Defendants within five days of receiving it.
17 Defendants shall then submit the release to Dr. Heitner so that he may release the documents to
18 them. Alternatively, Plaintiff may submit the signed release to Dr. Heitner within five days of
19 receiving it, but must also serve a declaration upon Defendants' counsel attesting under penalty of
20 perjury that she submitted the release to Dr. Heitner as required under this Order.

21  2.  Interrogatory Nos. 3, 4, 6, and 7

22 Next, Defendants take issue with Plaintiff's responses to Interrogatory Nos. 3, 4, 6, and 7.
23 These interrogatories ask Plaintiff to describe all current and future economic damages allegedly
24 incurred as a result of the February 22, 2008 incident, any symptoms of emotional distress she is
25 experiencing, and how she has attempted to minimize those damages. (Dkt. #55.)

26 In her responses to Interrogatory Nos. 3, 4, 6, and 7, Plaintiff again objects to all as
27 compound, complex, harassing, requesting privileged information, ague, ambiguous, overly broad,
28

9

entirely unintelligible, and unduly burdensome, in addition to objecting to the interrogatories as calling for legal interpretations and speculation. (Dkt. #55, Ex. A.) Defendants request that the Court order Plaintiff to supplement her responses to Interrogatory Nos. 3, 4, 6, and 7.

Defendants' request is well-taken. Plaintiff filed this lawsuit alleging monetary, physical and emotional damage. As previously discussed, Rule 26 provides that a party must provide, without a discovery request, "a computation of each category of damages claimed by the disclosing party[,]" as well as documents "on which each computation is based, including materials bearing on the nature and extent of injuries suffered. . . ." Fed. R. Civ. Proc. 26(a)(1)(A)(iii). In order to proceed, Plaintiff must inform Defendants and the Court as to what her damages are and what she anticipates them to be in the future. Thus, Plaintiff's objections to the above interrogatories are without merit. Accordingly, Plaintiff is ORDERED to supplement her responses to the above interrogatories within thirty days following issuance of this Order.

### IV.   CONCLUSION

Based on the foregoing, the Court ORDERS the following:

(1) Plaintiff is ORDERED to produce documents responsive to RFP Nos. 5-7 and 17-20, as limited above;

(2) Plaintiff is ORDERED to produce documents responsive to RFP No. 24;

(3) Plaintiff is ORDERED either to produce the tax returns for years 2007-2008, and bank statements for August 2007-August 2008 as discussed above, or to produce alternative documents that provide similar verifiable income information;

(4) Regarding Plaintiff's medical records, Defendants are to prepare a written release form and submit it to Plaintiff within seven days following issuance of this Order. Plaintiff is then ORDERED to sign the release and return it to Defendants within five days of receiving it. Defendants shall then submit the release to Dr. Heitner so that he may release the documents to them. Alternatively, Plaintiff may submit the signed release to Dr. Heitner within five days of receiving it, but must also serve a declaration upon Defendants' counsel attesting under penalty of perjury that she submitted the release to Dr. Heitner as required under this

Order; and

(5) Plaintiff is ORDERED to supplement her responses to Interrogatory Nos. 3, 4, 6, and 7 within thirty days following issuance of this Order.

**IT IS SO ORDERED.**

Dated: May 10, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge